IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DAREN GREEN and MICHELLE GREEN, husband and wife, individually and on behalf of their minor child, and E.G., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES, a Montana State agency, CHRISTY ELLERBEE, individually and as a DPHHS employee, HEIDI LUTZ, individually and as a DPHHS employee, DOROTHY FILSON, individually and as a DPHHS employee, and JANE DOES I-X,<br><br>Defendants. | CV 12–62–H–DLC<br><br>ORDER<br><br>**FILED**<br>JAN 2 1 2014<br>Clerk, U.S District Court District Of Montana Missoula |

The Defendants have filed two motions for summary judgment in this case, both of which Plaintiffs oppose. This order resolves both motions, and attempts to bring some clarity to the future resolution of this case. The challenge in issuing this order is to provide a clear road map to the parties specifically describing the Plaintiffs' claims which remain to be tried to a jury. This challenge is compounded by the fact that Defendants' motions, for the most part, are directed to specific and

discrete actions of certain defendants with only a cursory reference to the legal nature of the claim, e.g. "state law claim," "§ 1983 claim," etc., without ever tying these arguments to the six claims alleged in the Plaintiffs' Amended Complaint.[1] This leaves the Court with the task of trying to discern whether Defendants are seeking summary judgment on the Amended Complaint in its entirety, on only some of the six claims in the Amended Complaint, or on only portions of those claims.

Thus, in order to make some sense of all of this, the Court begins its analysis by focusing on the six claims in the Plaintiffs' Amended Complaint, which can be summarized as follows:

**FIRST CLAIM - Negligence.** In this claim, the Plaintiffs allege that the Department was negligent in removing E.G. from her parents on May 26, 2005, and in failing to later reunite her with her parents, or more specifically, that the Department failed to conduct a thorough investigation and to develop a treatment plan designed to reunite E.G. with her family. These alleged acts of negligence appear to be based on violations of state

---

[1] In Plaintiffs' Amended Complaint, the claim for negligent infliction of emotional distress and the claim for exemplary damages are both denominated as "Fifth Claim." For the sake of clarity, the Court will hereinafter refer to the claim for exemplary damages as the "Sixth Claim."

law.[2]

**SECOND CLAIM - Civil Rights Violation - Fourth Amendment.** In this claim, the Plaintiffs allege that Defendant Christy Ellerbee ("Ellerbee"), individually, violated their procedural due process rights under the Fourth Amendment of the U.S. Constitution by seizing and removing E.G. from them without a court order, without probable cause, and in deliberate indifference to their constitutional rights.

**THIRD CLAIM - Civil Rights Violation - Fourteenth Amendment.** In this claim, Plaintiffs allege that Defendants Ellerbee, Heidi Lutz ("Lutz") and Dorothy Filson ("Filson"), in their individual capacities, intentionally engaged in certain specified actions designed to terminate Plaintiffs' parental rights to E.G., in violation of the Fourteenth Amendment of the U.S. Constitution. The complained of actions by the individual Defendants include, without limitation, the unlawful removal of E.G. by Defendant Ellerbee from her parents on May 26, 2005, the failure by Defendant Ellerbee to conduct a thorough investigation, the wrongful contention by Defendants Lutz and Filson that Plaintiff Michelle Green suffered from

---

[2]A fair reading of the First Claim of the Amended Complaint appears to assert negligence claims based on violations of state law, notwithstanding the fact that paragraph 38 references Department duties arising under federal law. (Doc. 22 at 14.)

Munchausen's Syndrome by Proxy ("MSBP"), the wrongful insistence by Defendants Lutz and Filson that Plaintiffs admit they perpetrated a criminal act upon E.G. as part of the treatment plans, and the failure of Defendants Lutz and Filson to timely complete the treatment plans, all in deliberate indifference to the Plaintiffs' constitutional rights.

**FOURTH CLAIM - Civil Rights Violations - Fourteenth Amendment (by Conspiracy).** In this claim, Plaintiffs allege that Defendants Lutz and Filson, in their individual capacities, together conspired in the guise of the Gallatin County judicial proceeding to wrongfully terminate Plaintiffs' parental rights to E.G. by committing the same acts alleged in the Third Claim.

**FIFTH CLAIM - Intentional Infliction of Emotional Distress.** In this claim, Plaintiffs allege they suffered serious or severe emotional distress as a result of the Department's negligence, and the civil rights violations committed by the individual Defendants.

**SIXTH CLAIM - Exemplary Damages.** In this claim, Plaintiffs seek exemplary damages from individual Defendants Ellerbee, Lutz, and Filson. Plaintiffs seek damages in this case for lost wages, medical and counseling costs, emotional distress, pain and suffering, punitive damages, attorneys' fees, costs, pre

and post-judgment interest and for loss of parent-child consortium.

The Court now turns to the Defendants' motions for summary judgment. In the first motion, the Defendant Montana Department of Health and Human Services ("Department") seeks summary judgment based on four arguments:

1.    Plaintiffs' state law claims against the department relating to Ellerbee's placement of E.G. in emergency protective services on May 26, 2005 are barred by quasi-judicial immunity.

2.    Plaintiffs' state law claims against the Department must be dismissed because Judge Brown's June 1, 2005 Order, and all successive orders, broke the chain of causation between the Department's alleged negligence and Plaintiffs' damages.

3.    The Department has absolute quasi-judicial immunity for all actions taken by its agents and employees following the first order issued by District Court Judge Holly Brown of the Eighteenth Judicial District on June 1, 2005.

4.    Plaintiffs' state law claims against the Department are barred by collateral estoppel.

This motion appears to be directed to the First Claim of the Amended Complaint, and ostensibly seeks dismissal of that Claim in its entirety.

In the second motion, Defendants Ellerbee, Filson, and Lutz ("Individual Defendants") seek partial summary judgment based on eleven separate arguments:

1.    Plaintiffs' § 1983 claims against Ellerbee should be dismissed based on qualified immunity.

2.    In the alternative, Ellerbee is entitled to partial summary judgment on Plaintiffs' damage claims allegedly suffered after June 1, 2005.

3.    Defendant and supervisor Filson is not subject to § 1983 liability for the actions of Ellerbee, Gayle Frandsen ("Frandsen"), and Lutz because she did not individually violate any of the Plaintiffs' constitutional rights.

4.    Lutz is not individually liable under §1983 for the decision to place E.G. in emergency protective custody on May 26, 2005, or for the preparation or contents of the affidavit in support of the Petition for Emergency Protective Services, because she did not participate in either of those actions.

5.    Filson and Lutz are entitled to quasi-judicial immunity and therefore are not individually liable under § 1983 for actions taken to maintain E.G. in protective and legal custody following District Court Judge Holly Brown's Order for Immediate Protection on June 1, 2005.

6. Filson and Lutz are entitled to absolute witness immunity for any testimony they provided during E.G.'s abuse and neglect proceedings.

7. Lutz is entitled to qualified immunity for any allegedly false allegations she made in affidavits or reports that E.G. had been abused or neglected by her parents because she was simply stating what the district court had already found.

8. Filson and Lutz did not violate Plaintiffs' Fifth Amendment rights.

9. Any claim against Lutz based on the filing of the termination petition should be dismissed because Lutz did not file the petition.

10. The negligent infliction of emotional distress claim against Ellerbee, Lutz, and Filson is barred by the statutory immunity found in Mont. Code Ann. § 2-9-305.

11. Plaintiffs' Claims against Defendants Ellerbee, Lutz, and Filson are barred by collateral estoppel.

The Court views arguments 1 and 2 above as seeking dismissal of the Second Claim of the Amended Complaint in its entirety. Argument 3 appears to seek a partial dismissal of the Third and Fourth Claims as to only Filson in her role as a supervisor of Ellerbee, Frandsen, or Lutz. Argument 4 appears to seek a narrow, partial dismissal of the Third Claim as to only Defendant Lutz relating to her lack

of involvement in the decision to place E.G. in emergency protective custody on May 26, 2005 and in the preparation of the affidavit in support of the Petition for Emergency Protective Services. Filson and Lutz appear to be seeking dismissal of the Third Claim against them in its entirety in argument 5; argument 5 may also be directed to dismissal of the Fourth Claim of the Amended Complaint. Argument 6 is seemingly directed to a partial dismissal of the Third and Fourth Claims as to Defendants Filson and Lutz relating to their limited testimony during the abuse and neglect proceedings. Argument 7 seeks a narrow partial dismissal of the Third Claim as to only Defendant Lutz relating to false allegations made by her in affidavits or reports filed with the district court. Argument 8 seeks a partial dismissal of the Third and Fourth Claims to the extent they allege a violation of the Fifth Amendment by Filson or Lutz. Argument 9, again, seeks a narrow partial dismissal of the Third Claim as to only Defendant Lutz regarding the filing of the termination petition. Argument 10 seeks a partial dismissal of the Fifth Claim (negligent infliction of emotional distress) against Ellerbee, Filson, and Lutz. Finally, argument 11 appears to seek a complete dismissal of the Second, Third, and Fourth Claims against Ellerbee, Filson and Lutz based on collateral estoppel.

With this preliminary analysis in mind, the Court now turns to the facts which are germane to the disposition of the Defendants' two motions for summary

judgment.

## BACKGROUND FACTS & PROCEDURE

On May 26, 2005, based on a report of possible child abuse and neglect, Individual Defendant and Department employee Christy Ellerbee removed E.G. from the custody of her parents, Michelle and Daren Green, while she was being treated at St. Vincent's Hospital in Billings, Montana for a dislodged feeding tube. The specific allegation that gave rise to this initial period of protective custody, as well as to subsequent periods of temporary legal custody granted to the Department by State District Judge Holly Brown, was that Michelle Green suffered from Munchausen's Syndrome by Proxy, and had abused and neglected her daughter by subjecting her to unnecessary medical treatment.

On May 27, 2005, the day after Defendant Ellerbee placed E.G. in emergency protective custody, Gayle Frandsen took over the investigation of E.G.'s case. Frandsen prepared and signed an Affidavit for Emergency Protective Services and Temporary Legal Custody, which was filed in conjunction with a Petition for Emergency Protective Services and Adjudication as Youth in Need of Care. Based on those documents, the district court entered an Order for Immediate Protection, finding that the facts presented in the petition and affidavit established probable cause to believe that E.G. was abused or neglected or in danger of being

abused or neglected, that immediate protection was required, and ordering the Department to maintain custody. Judge Brown conducted a show cause hearing, beginning on June 17, 2005, and concluding on June 30, 2005, which was attended by Daren and Michelle Green and their Counsel.[3] Following this hearing, Judge Brown issued an order continuing emergency protective services and finding, *inter alia*, that probable cause existed to believe that E.G. was abused or neglected. On August 25 and 26, 2005, Judge Brown held an adjudication hearing and filed her resulting Findings of Fact and Conclusions of Law for Adjudication on November 8, 2005, finding that the Department had "proven by a preponderance of the evidence that the parents have abused or neglected E.G. as defined in § 41-3-102." (Doc. 57-24 at 19, ¶ 8.) Following a hearing on November 15, 2005, Judge Brown issued an order that, *inter alia*, granted the Department temporary legal custody of E.G. for a six month period expiring on or about May 14, 2006, and ordered the Department to create treatment plans for the parents after conferring with the parents and their Counsel regarding the requirements of the treatment plans. These plans were the subject of several objections and revisions, including one court-ordered revision (Doc. 57at 30, ¶ 105), and were ultimately signed by Plaintiffs, filed, and incorporated into Judge Brown's order of

---

[3]Plaintiffs' counsel in the instant case, James Kommers, also represented Daren and Michelle Green throughout the underlying state court proceedings.

July 6, 2006. On September 21, 2006, Judge Brown signed an order denying the parents' motion to terminate custody and emergency motion for amendment to order extending temporary legal custody. On February 9, 2007, Judge Brown granted the Department's request to extend temporary legal custody, and on February 21, 2007, the Department filed a Petition for the Termination of Parental Rights. Judge Brown conducted a hearing on that Petition, which began on May 25, 2007, and continued on August 27-31, 2007.

On December 14, 2007, Judge Brown filed her Findings of Fact, Conclusions of Law, and Order on Termination of Parental Rights, in which she ordered E.G. returned to her parents' physical custody on December 15, 2007, and ordered that the parents regain full legal custody on January 31, 2008.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 317, 323 (1986). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to

11

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson*, 477 U.S. at 251–52. Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

### THE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT

### 1. The Initial Removal and Placement of E.G. in Emergency Protective Services & Quasi-Judicial Immunity

The Department argues that to the extent Plaintiffs' state law claims against it are based on Ellerbee's May 26, 2005 placement of E.G. in emergency protective services, those claims are barred by quasi-judicial immunity because Ellerbee was performing a quasi-judicial function. The Department expressly limits its motion to the initial placement, and does not address any activity prior to or following this initial decision.

Quasi-judicial immunity derives from the common law, and has long been recognized by the Montana Supreme Court as an appropriate protection for agency

officials undertaking certain actions. *See Koppen v. Board of Medical Examiners*, 759 P.2d 173 (Mont. 1988) ("[A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts"). "Governmental agencies and officers are immune from tort liability when they commit torts while performing quasi-judicial functions." *Eklund v. Trost*, 151 P.3d 870, 876 (Mont. 2006). A "quasi-judicial function" is defined as "an adjudicatory function exercised by an agency, involving the exercise of judgment and discretion in making determinations or controversies." *Id.* (Quoting Mont. Code. Ann. § 2-15-102(9) (1999)). Quasi-judicial functions "involve the exercise of the actor's discretion, whereas administrative or ministerial functions are performed without the exercise of discretion." *Id.*

On May 26, 2005, Ellerbee was acting pursuant to Montana law, which states: "Any child protective social worker of the department . . . who has reason to believe any youth is in immediate or apparent danger of harm *may* immediately remove the youth and place the youth in a protective facility." Mont. Code Ann. § 41-3-301 (2005) (emphasis added). Use of the word "may" in a statute delegating power to a government agency shows the legislature's intent to give that agency the "discretionary authority to act or decline to act." *Sikorski v. Johnson*, 143 P.3d 161, 167 (Mont. 2006). Thus, the plain language of the statute establishes that

13

Ellerbee was performing a discretionary function on behalf of the department when she placed E.G. in emergency custody, and is thus entitled to quasi-judicial immunity. Beyond the language of the specific statute at issue here, the Court finds that the act of placing a child in protective custody is a judgment call, and inherently discretionary.

Plaintiffs appear to concede that the decision to place E.G. in protective custody is discretionary, stating that "while that singular statute [Montana Code Annotated § 41-3-301][4] may be discretionary, the department's legislated duties prior to, and after the state court's intervention were ministerial or administrative." (Doc. 66 at 3.) Plaintiffs then cite to § 41-2-202(1) (2003), which states that, "[i]f the department determines that an investigation is required, a social worker . . . shall promptly conduct a thorough investigation into the circumstances surrounding the allegations of abuse or neglect of the child." Plaintiffs also cite several provisions of the "Children's Services Policy Manual, October 2004," (Doc. 68-25), that address the Department's duties surrounding the emergency custody action and establishes the department's standard for a "thorough

---

[4] Plaintiffs actually reference § 41-3-302, stating that "DPHHS relies exclusively on § 41-3-302, Mont. Code Ann., to argue it has discretion generally." (Doc. 66 at 3.) However, the Court assumes that Plaintiff was referring to MCA § 41-3-301, since that is the statute the Department cites to support its argument that it had general discretion. Defendants did cite § 41-3-302, but in reference to procedural safeguards.

14

investigation." (Doc. 66 at 3.) Plaintiffs are correct that there are numerous ministerial acts surrounding Ellerbee's decision, but the Department's motion as to this point is very narrow, and is limited only to Ellerbee's determination on May 26, 2005 to place E.G. in emergency protective custody pursuant to § 41-3-301.

The Court agrees with the Department that, to the extent Plaintiffs' state law claims (Claim One and Claim Five of the Amended Complaint) against the Department are based on Ellerbee's May 26, 2005 placement of E.G. in emergency protective services, those claims are barred by quasi-judicial immunity because she was exercising her discretion. However, this does not preclude Plaintiffs from bringing state law claims regarding the ancillary and ministerial act of conducting an investigation required by Montana Code Annotated § 41-2-202(1).

## 2. Chain of Causation

The Department next argues that Plaintiffs' state law claims against it should be dismissed because beginning on June 1, 2005, District Court Judge Holly Brown's numerous orders granting the Department's motions for temporary legal custody broke the chain of causation between the Department's alleged negligence and Plaintiffs' damages – E.G.'s separation from her parents.

The Ninth Circuit has held that, "Pursuant to traditional tort law principles of causation . . . a judicial officer's exercise of independent judgment in the course

15

of his official duties is a superseding cause that breaks the chain of causation"
linking a state official to the judicial officer's decision. *Galen v. Cnty. of Los
Angeles,* 477 F.3d 652, 663 (9th Cir. 2007). However, the chain of causation will
remain intact if the Plaintiff can establish judicial deception: that the Department
and its agents prevented the district court from exercising its independent
judgment. *See id.* ("Sergeant Barrier and Deputy Heinrich can be liable for
Galen's allegedly excessive bail only if they prevented the Commissioner from
exercising his independent judgment"); *Smiddy v. Varney,* 665 F.2d 261, 266-67
(9th Cir.1981), *as amended* (police officers may be liable for a falsely imprisoned
arrestee's continued detention after a prosecutor charges the arrestee only if they
cause the prosecutor to act contrary to his independent judgment).

 In order to establish judicial deception, Plaintiffs must, "1) make a
substantial showing of deliberate falsehood or reckless disregard for the truth and
2) establish that, but for the dishonesty, the challenged action would not have
occurred." *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). Under
the second prong, the Court must examine whether the Affidavit's alleged
misrepresentations or omissions were material to the district court's decision to
grant the petition. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir.
2011). To satisfy the materiality element, Plaintiffs must demonstrate that the

16

district court would not have granted the Department's petition absent the misrepresentations, and after considering the omissions. *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) ("The materiality element—a question for the court —requires the plaintiff to demonstrate that the magistrate would not have issued the warrant with false information redacted, or omitted information restored").

As to the first prong of the deception analysis, Plaintiffs claim that the Department's Affidavit made material omissions and contained false information. Specifically, Plaintiffs allege that the Affidavit contained the following omissions: (1) Daren and Tina Lofgren observed E.G. was vomiting and retching on May 26, 2005 and the night before; (2) E.G.'s parents had taken her to the Bozeman Deaconess Hospital because they were instructed to do so by Billings Deaconess Hospital; and (3) Dr. Starr believed that E.G.'s ileostomy was necessary at the time it was done, and that he had no objective evidence that E.G.'s parents harmed her.

Plaintiffs allege that the Department made or implied the following false representations: (1) E.G. was being fed exclusively by tube, even though she was eating solid foods daily under her parents' care; (2) E.G.'s parents had unnecessarily caused E.G. to undergo Nissen fundoplication and gastronomy procedures, when their doctors had recommended those procedures based on

objective evidence of her diagnosis; (3) E.G.'s ileostomy was unnecessary, while it was in fact recommended by doctors; (4) Dr. Pinkerton met with Michelle and saw E.G. on May 26, 2005, when in fact he had not; and (5) Dr. Pinkerton said Michelle applied a catheter to E.G.'s urinary tract, when he in fact did not.

The Court need not wade into the validity of each of these claims, and will presume for purposes of resolving the instant motion that the Plaintiffs made a "substantial showing of deliberate falsehood or reckless disregard for the truth," since it finds that Plaintiffs have not met their burden to satisfy the second prong of the judicial deception analysis as a matter of law.[5]

Upon reviewing the district court's order of June 1, 2005 and June 30, 2005, it is unclear on precisely what bases Judge Brown made her decision to grant the Department's petition. Absent specific findings, the Court cannot conclude that – but for the alleged omissions and misrepresentations – the district court would have denied the Department's petition, and it declines to assume that the Department "duped" it into granting custody (Doc. 66 at 17). As described above, this matter came before the district court on numerous occasions and in various

_____

[5] Determining whether conduct is either deliberate or reckless is the province of the jury. Thus, if Plaintiffs had not failed on the second prong of the judicial deception analysis as discussed herein, the Court would deny this motion in order to allow the jury to determine if the Department's alleged misrepresentations or omissions were either reckless or deliberate.

contexts over the course of two and a half years. The district court repeatedly found probable cause for abuse and neglect, and continued to maintain E.G. in state custody, and it did so based on an extensive record. The Plaintiffs had the opportunity to contribute to this record, develop additional facts, and rebut the Department's evidence.

Although the burden to establish judicial deception falls on the Plaintiffs, the Department offers compelling evidence that one of the omissions was not material, and would not have altered the district court's decision. At the June 17, 2005 hearing, Dr. Starr testified that he believed that the ileostomy was necessary at the time it was conducted, and that he had no objective evidence that E.G.'s parents harmed her. In this Court's view, this is one of the most weighty omissions that Plaintiffs present in their argument for judicial deception. However, even after receiving this testimony during the June 17, 2005 hearing, the district court did not change its course. Thus, there is no reason to believe that the court would not have reached the same decision if it had received this evidence initially.

Finally, the Department advances the novel argument that Plaintiffs' own actions demonstrate that the alleged omissions and misrepresentations were not material. The Department states that during the show cause hearing (June 17 and 30, 2005), Plaintiffs had the opportunity to redress the alleged omissions and

misrepresentations as follows: (1) Counsel could have cross-examined Frandsen about her investigation and her alleged failure to interview the Greens prior to filing the initial petition and affidavit; (2) Daren and Michelle Green and Tina Lofgren could have testified that they observed E.G. vomiting and retching on May 25 and 26, 2005; (3) Daren and Michelle Green could have testified that they took E.G. to the Bozeman Deaconess Hospital based on Billings Deaconess's instruction, and that E.G. was eating solid foods. The Department argues that Plaintiffs' failure to do so undercuts their argument as to the materiality of these facts, and the Court does not disagree, although it does not base its finding solely on this point. Plaintiffs presumably had access to all of this information at the time of the show cause hearing, but failed to present it. Plaintiffs now claim that this information is material, and if the district court had been aware of this evidence, it would have reached a different decision. This Court is not prepared to find that Judge Brown failed to reach an independent decision, and in effect, second guess that decision, because she did not have evidence that the party challenging that decision now deems to be material, but yet failed to present when it had the opportunity.

Plaintiffs have failed to demonstrate that – but for the Department's alleged omissions and misrepresentations – the district court would not have granted the

Department's petition. Accordingly, this Court finds that the district court exercised independent judgment in granting the Department's petition for immediate protection, continuing that order, and granting the Department's motion for temporary legal custody. The district court's exercise of independent judgment is a superseding cause that breaks the chain of causation between the Department's alleged negligence and Plaintiffs' damages as of June 1, 2005.

### 3. Conclusion

The district court's orders broke the chain of causation between the Department's alleged negligence and the Plaintiffs' damages. Accordingly, the Court will grant the Department's motion for summary judgment on the First Claim of the Amended Complaint as to any negligence claims premised on damages that occurred following the district court's June 1, 2005 order.

Additionally, the Court will grant summary judgment in favor of the Department on the First Claim to the extent Plaintiff's state law claims against it are based on Ellerbee's May 26, 2005 placement of E.G. in emergency protective services. Those claims are barred by quasi-judicial immunity because Ellerbee was exercising her discretion.

However, this order does not preclude Plaintiffs' state law claims as alleged in the First Claim insofar as they relate to the Department's duty to conduct an

investigation pursuant to Montana Code Annotated § 41-2-202(1) prior to placing E.G. in emergency protective custody; any such investigation is a ministerial act, and the chain of causation between the Department's actions and the alleged damages was not severed by the district court's independent judgment.

Due to the Court's decision regarding chain of causation, it declines to address Department's argument as to absolute quasi-judicial immunity.

The Court further declines to address the Department's collateral estoppel argument at this time in light of (1) the Court's determinations regarding collateral estoppel contained within its order on Plaintiffs' Motion in Limine (Doc. 77), and (2) the duplicative nature of the remedy the Department seeks on collateral estoppel and the Court's decision as to the chain of causation.

## THE INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## 1. Plaintiffs' § 1983 Claims Against Ellerbee & Qualified Immunity

Defendant Ellerbee argues that the § 1983 claims against her, as alleged in the Second Claim of the Amended Complaint, should be dismissed based on qualified immunity. Qualified immunity protects state officials from liability for civil damages under § 1983 when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine if

qualified immunity applies, the Court must consider whether "the facts alleged by the plaintiff, taken in the light most favorable to the party asserting the injury, show that the defendant violated a constitutional right." *Brown v. State of Montana*, 442 F.Supp.2d 982, 990 (D. Mont. 2006) (internal quotation marks and citations omitted). Next, the Court must determine "whether the constitutional right was clearly established at the time the defendant allegedly violated it." *Id.* Summary judgment is appropriate if the Court answers either question in the negative.

Plaintiffs allege that Ellerbee removed E.G. from their custody without reason to believe that she faced imminent danger of fear or abuse. Defendants do not contest the fact that these allegations clearly implicate a myriad of Constitutional rights – including the Fourth Amendment to be free of unreasonable searches and seizures, as well as their Fourteenth Amendment procedural due process rights. Thus, the dispositive question is whether those rights were clearly established at the time of the alleged violation. To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In this context, it is well established that "the state may not remove children

from their parents' custody without a court order unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 1999); *see also Brown*, 442 F.Supp.2d at 993. The Court must determine "whether a reasonable social worker could have believed that taking [E.G.] and holding [her] in temporary protective custody was lawful in light of clearly established law and the information the social worker possessed." *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989) (internal quotation marks omitted). "Only the information [Ellerbee] had when [she] made the challenged decisions is relevant." *Id.* at 185, n. 1. Thus, for the purposes of determining whether Ellerbee is entitled to qualified immunity, the Court must evaluate the facts as Ellerbee received and understood them on the afternoon of May 26, 2005, and in the context of the situation that unfolded that day.

Given the facts of this case, it is easiest to conceptualize and apply these legal standards as three separate, but interrelated questions that the Court must address: (1) does Ellerbee provide specific, articulable evidence for a finding of reasonable cause that E.G. was in danger of abuse; (2) if so, was that danger imminent, i.e., were there exigent circumstances; (3) if so, would a reasonable social worker believe that Ellerbee's taking E.G. and placing her in immediate

24

protective custody was lawful.

After 4:00 p.m. on May 26, 2005, Marilyn Eulor, a licensed clinical social worker at the Billings Deaconess Hospital, called the Montana Child Abuse Hotline, and reported that three different doctors at the hospital asked her to call the Hotline to make a report about E.G. because they were concerned about her welfare. E.G. had been at Deaconess earlier that day, but had been transferred to St. Vincent's because St. Vincent's specialized in pediatrics. The Hotline was answered by the Centralized Intake Unit of the Child and Family Services Division of the DPHHS. Based on the phone call, the Centralized Intake Unit personnel determined that Eulor's report indicated that E.G. might be in immediate danger of serious harm, and was a "priority one" report, meaning that it should be investigated immediately. Sometime after 4:30 p.m., Ellerbee went to St. Vincent's in response to the report. E.G. was in the hospital because her feeding tube had become dislodged and her mother believed it needed to be reattached. Once at the hospital, she spoke with several nurses and other staff members who provided her with information from E.G.'s medical records. They indicated that E.G.'s tube had been dislodged on prior occasions, and with unusual frequency. Ellerbee also witnessed E.G. eating potato chips, which aroused suspicion as to the necessity of the feeding tube. These facts convince the Court that Ellerbee presents sufficient

specific, articulable evidence to believe that E.G. was in danger of abuse in the form of unnecessary surgery. Ellerbee was presented with information that several medical professionals had concerns about the need for the surgery sought by E.G.'s parents. Ellerbee reasonably questioned the need for the feeding tube, and was faced with a situation in which E.G.'s parents were seeking what she perceived to be – based on the evidence available to her at the time – another unnecessary surgery.

Next, the Court will look to whether this danger was imminent. The medical personnel at St. Vincent's informed her of their concerns that E.G.'s family had a pattern of leaving medical facilities and firing medical professionals. While many of the underlying details surrounding these claims are contested, the fact remains that in the precise factual scenario that Ellerbee faced on the evening of May 26, 2005, a reasonable social worker in her position would be justified in believing that the threat of harm was imminent. E.G. was already admitted to the hospital awaiting the surgery to reattach her feeding tube. She was presented with evidence that could lead to the reasonable conclusion that if Ellerbee did not intervene, (1) E.G. would be subject to the potentially unnecessary medical procedure, or (2) if E.G.'s parents did not get the treatment they desired at St. Vincent's, they would remove her from the hospital and attempt to find a medical provider that would

perform the procedure. The Court finds that Ellerbee furnished specific, articulable evidence that provides reasonable cause to believe that E.G. was in imminent danger of abuse.

All that remains is to determine whether a reasonable social worker would believe that Ellerbee's taking E.G. and placing her in immediate protective custody was lawful, or, put another way, "whether Montana law could have persuaded a reasonable official that her actions were lawful," *Brown*, F.Supp.2d at 996. As United States Magistrate Judge Carolyn Ostby stated in *Brown*, "When the Montana Legislature has enacted a statute, a social worker is ordinarily entitled to rely on the assumption that the drafters, legislators, and legal counsel have considered the implications and concluded that the statute is a valid and constitutional exercise of authority." *Id.* As discussed at length above, at the time of Ellerbee's actions Montana law provided that: "Any child protective social worker of the department . . . who has reason to believe any youth is in immediate or apparent danger of harm may immediately remove the youth and place the youth in a protective facility." Mont. Code Ann. § 41-3-301 (2005) (emphasis added). Ellerbee's reliance on the statutory authority given to her by § 41-3-301 was entirely reasonable.

On May 26, 2005, Ellerbee made a determination to place E.G. in

emergency protective custody. The Court finds that her decision to do so was based on specific, articulable evidence that provided reasonable cause to believe that E.G. was in imminent danger of abuse. The Court also finds that as a matter of law, a reasonable social worker could have believed that taking E.G. and holding her in temporary protective custody was lawful in light of clearly established law and the information Ellerbee had at the time. Thus, Ellerbee is entitled to qualified immunity for the Plaintiffs' § 1983 claims related to her removal and placement of E.G. in emergency protective custody. Since it is undisputed that Ellerbee's involvement with E.G. and the Plaintiffs ended after those actions, qualified immunity shields Ellerbee from all liability in this case.

Accordingly, the Court will dismiss the Second Claim of the Amended Complaint in its entirety. The Court will also dismiss all portions of the Third, Fifth, and Sixth Claims of the Amended Complaint insofar as they are related to Ellerbee. Since all claims pertaining to Ellerbee will be dismissed on grounds of qualified immunity, she is further dismissed as a Defendant in this matter.

## 2. Ellerbee and Absolute Quasi-Prosecutorial Immunity

Based on the Court's decision that Ellerbee is entitled to qualified immunity for all potential § 1983 liability, the Court need not address Defendants' alternate argument that Ellerbee is entitled to partial summary judgment as to any damages

allegedly suffered by Plaintiffs after June 1, 2005.

### 3. Filson's Liability Under § 1983

Defendants next move for partial summary judgment on Plaintiffs' § 1983 claims as alleged in the Third and Fourth Claims of the Amended Complaint against only Defendant Dorothy Filson on the basis that she was merely Frandsen and Lutz's supervisor, and did not: (1) participate in or oversee Ellerbee's decision to place E.G. in emergency protective custody; (2) review Frandsen's affidavit in support of the petition; or (3) involve herself with the day-to-day management of E.G.'s case, which Lutz was responsible for. Plaintiffs concede the first two points. (Doc. 67 at 8).

Supervisors "cannot be held liable unless they themselves" violated a constitutional right. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880F.2d 1040, 1045 (9th Cir. 1989); *see also Mabe v. San Bernadino County, Dept. of Public Social Services*, 237 F.3d 1101, 1109 (9th Cir. 2001) ("The Supreme Court has concluded that in enacting section 1983 Congress did not intend to impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with the tortfeasor").

29

Thus, Defendants are correct that Plaintiffs cannot state a claim against Filson based solely on her position as Lutz's supervisor. However, Plaintiffs have alleged that Filson was directly involved with the management of E.G.'s case, and that she conspired with Lutz to violate the Plaintiffs' Fourth Amendment rights. Defendants have not met their summary judgment burden as to Filson, since her involvement in the case is contested, and presents a factual dispute for the jury to resolve. Accordingly, this motion for partial summary judgment on the Third and Fourth Claims is denied.

## 4. Scope of Lutz's Liability

In is uncontested that Defendant Heidi Lutz became involved in this case on March 6, 2006. Thus, she was not involved in the decision to place E.G. into protective custody, or in the preparation of the affidavit in support of the petition for emergency protective services, and the Court will grant partial summary judgment as to any liability predicated on those bases as alleged in the Third Claim of the Amended Complaint.

## 5. Absolute Quasi-Judicial Immunity as to Filson and Lutz

Defendants next move the Court to find that Filson and Lutz are entitled to absolute quasi-judicial immunity for maintaining E.G. in protective and temporary legal custody beginning when Judge Brown signed the order for immediate

protection on June 1, 2005, because "from that point on, the Department and its agents were lawfully discharging official duties associated with judicial actions of the court and directly implementing Judge Brown's orders by maintaining custody over E.G."[6] The Court believes that this motion is directed to the Third Claim as to Defendants Filson and Lutz, and perhaps the Fourth Claim, which allege violations under § 1983.Within those Claims, Plaintiffs have alleged, *inter alia*, that the Individual Defendants persisted in their allegations that E.G. had been abused or neglected, despite knowing otherwise; failed to timely implement the treatment plans; and insisted that the parents admit they abused E.G. The Defendant's claim for absolute quasi-judicial immunity does not touch upon any of these allegations, but merely on the fact that the Department maintained custody pursuant to the district court's orders.

In *Coverdell v. Department of Health and Human Services, State of Washington*, the Ninth Circuit recognized that child protection workers are

---

[6] In their reply brief in support of the motion, Defendants advance a much broader argument as to quasi-judicial immunity for Filson and Lutz. Defendants also raise a claim for quasi-prosecutorial immunity for the first time in that brief, seemingly conflating quasi-judicial and quasi-prosecutorial immunity, which are in fact separate and distinct immunities. *See Coverdell v .Dep't of Soc. & Health Servs., State of Wash.*, 834 F.2d 758, 762–765 (9th Cir. 1987) (discussing and deploying separate analyses for each immunity). The Court will not address claims or arguments raised for the first time in the Defendants' reply brief, and will limit its resolution of this issue to the narrow ground upon which Defendants based their motion.

entitled to absolute quasi-judicial immunity for certain actions taken to execute valid court orders. 834 F.2d 758, 765 (9th Cir. 1987) ("The same concerns dictate that a CPS worker be accorded absolute quasi-judicial immunity from liability for damages stemming from the worker's apprehension of a child pursuant to a valid court order"). In *Coverdell* the Court held that a social worker who obtained custody of a child pursuant to a valid court order was entitled to absolute quasi-judicial immunity. *Id.* at 765. Here, while the Defendants maintained custody of E.G. pursuant to a court order, Plaintiffs' claims are more complex and far reaching than merely taking and maintaining custody. While the Court will grant summary judgment as to that narrow point, the Defendants have not met their burden for summary judgment as to Plaintiffs various other allegations in the Third and Fourth Claims of the Amended Complaint.

## 6. Absolute Witness Immunity for Allegedly False Testimony Provided by Lutz and Filson

Defendants next invoke absolute witness immunity to seek partial dismissal of Claims Three and Four of the Amended Complaint as to the specific claims that "Defendants Lutz and Filson intentionally made false allegations or recklessly ignored the truth when [they] alleged E.G. was a victim of abuse and neglect during the emergency custody, adjudication, and termination proceedings." (Doc.

22 at ¶ 92.) Defendants first clarify the uncontested fact that neither Filson nor

Lutz testified during the show cause or adjudication hearings, and thus could not

have made false allegations or recklessly ignored the truth during those

proceedings. Defendants seek witness immunity for Lutz's testimony offered at

numerous district court hearings beginning on June 16, 2006 and ending with the

termination hearing, and for Filson's testimony at the termination hearing.

The Supreme Court addresses absolute witness immunity in the context of

§ 1983 claims at length in *Briscoe v. LaHue*, 460 U.S. 325 (1983), stating:

> In short, the common law provided absolute immunity from
> subsequent damages liability for all persons-governmental
> or otherwise-who were integral parts of the judicial
> process. It is equally clear that § 1983 does not authorize
> a damages claim against private witnesses on the one hand,
> or against judges or prosecutors in the performance of their
> respective duties on the other. When a police officer
> appears as a witness, he may reasonably be viewed as
> acting like any  other witness sworn to tell the truth-in
> which event he can make a strong claim to witness
> immunity; alternatively, he may be regarded as an official
> performing a critical role in the judicial process, in which
> event he may seek the benefit afforded to other
> governmental participants in the same proceeding. Nothing
> in the language of the statute suggests that such a witness
> belongs in a narrow, special category lacking protection
> against damages suits.

*Id.* at 335-36. The Court went on to state that:

> Moreover, to the extent that traditional reasons for witness immunity are less applicable to governmental witnesses, other considerations of public policy support absolute immunity more emphatically for such persons than for ordinary witnesses. Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties.

*Id.* at 342-43. The Court concluded that the same principles that protect judges and prosecutors "also apply to witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just-or possibly unjust-conclusion is equally indispensable." *Id.* at 345-46.

In *Mabe v. San Bernadino County Department of Public Social Services*, the Ninth Circuit addressed absolute witness immunity in the context of social workers, concluding that they are "entitled to absolute immunity for the initiation and pursuit of dependency proceedings, *including their testimony offered in such proceedings.*" 237 F.3d 1101, 1109 (9th Cir. 2001) (emphasis added).

*Briscoe* and *Mabe* clearly establish that Lutz and Filson are entitled to absolute immunity for any testimony they offered at the various hearings before the state district court, including the ultimate termination hearing. In arguing

against absolute witness immunity, Plaintiffs cite to *Beltran v. Santa Clara County*, in which the Ninth Circuit states that social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit." 514 F.3d 906, 908 (9th Cir 2008). *Beltran* is inapposite to the Defendants' argument on the specific point of witness immunity because *Beltran* addresses absolute quasi-judicial immunity, which is separate and distinct from the absolute witness immunity sought here. Additionally, *Beltran* is limited to the fabrication of evidence either during an investigation prior to the start of judicial proceedings, or in the affidavit that initiates such proceedings. Defendants' argument on this point is limited to their roles as witnesses well after the proceedings had been initiated.

Filson and Lutz's testimony falls squarely under the absolute immunity afforded witnesses by *Briscoe* and *Mabe*, and the Court will grant partial summary judgment on Claims Three and Four of the Amended Complaint based on absolute witness immunity as to testimony they provided at the state district court hearings.

### 7. Lutz's Qualified Immunity for Allegedly False Allegations in Affidavits or Reports

Defendants next claim that Lutz is entitled to qualified immunity for any false or reckless allegations she made that E.G. was abused or neglected, or in

danger of being abused or neglected. This motion seeks partial summary judgment on the Third Claim of the Amended Complaint. Plaintiffs have not established that Lutz made any false or reckless statements, and that those statements led to the deprivation of a Constitutionally protected interest. However, even if they could make such a showing, this claim would be dismissed on the basis of qualified immunity under the Ninth Circuit's decision in *Costanich v. Department of Social and Health Services.* 627 F.3d 1101 (9th Cir. 2010).

In *Costanich*, the Plaintiff was able to produce evidence that the defendant social worker deliberately falsified statements in her investigative reports. The court established the principle that "going forward, officials who deliberately fabricate evidence in civil child abuse proceedings which result in the deprivation of a protected liberty or property interest are not entitled to qualified immunity." *Id.* at 1114. However, the court dismissed the plaintiff's claim for deliberate fabrication on the basis of qualified immunity, since that right had not been clearly established at the time of the Defendant's conduct.

The Court is faced with a similar situation here. *Costanich* was decided in December of 2010, long after the termination of E.G.'s abuse and neglect proceedings. Thus, at the time Lutz made the allegedly false or fabricated statements or evidence, she was not violating a clearly established right, and is

36

therefore entitled to qualified immunity for any false allegations in affidavits or reports submitted to the district court as alleged in the Third Claim of the Amended Complaint.

## 8. Fifth Amendment Claims

Defendants claim that neither Filson nor Lutz violated Plaintiffs' Fifth Amendment Claims. The Court accepts Plaintiffs' response that they do not allege a Fifth Amendment violation – which even a cursory reading of the Amended Complaint would also reveal. Summary judgment as to this argument will be denied as moot.

## 9. Lutz's Liability for Filing the Termination Petition

Puzzlingly, Defendants next move the Court to dismiss any claim against Lutz based on the filing of the termination petition because she did not in fact file the petition. Not surprisingly, Plaintiffs concede this point, and clarify that their claim against Lutz is for maintaining the removal of E.G. and conspiring to terminate their parental rights throughout the district court proceedings. Summary judgment as to this argument will be denied as moot.

## 10. State Law Claims and Statutory Immunity

Next, Defendants focus on the Fifth Claim of the Amended Complaint, arguing that to the extent Plaintiffs are attempting to assert a claim of negligent

infliction of emotional distress under state law against Ellerbee, Lutz, and Filson, that claim is barred by statutory immunity. The Court interprets the Plaintiffs response on this point as clarifying that this portion of the Fifth Claim of the Amended Complaint does not allege a state claim for negligent infliction of emotional distress, but is instead related to damages under their § 1983 claims.

Insofar as Plaintiffs are asserting a state law claims against the Individual Defendants, Montana Code Annotated § 2-9-205(5) provides that state employees "acting within the course and scope" of their employment are protected from liability. It is uncontested that the Individual Defendants were acting within the scope of their authority, and therefore, insofar as the Fifth Claim of the Amended Complaint asserts a state claim of negligent infliction of emotional distress under, that claim is barred by statutory immunity.

The Court finds the wording of the Fifth Claim of the Amended Complaint to be very ambiguous. On its face, it appears to be limited to a state law claim for negligent infliction of emotional distress. However, paragraph 106 seems to implicate the alleged § 1983 violations: "Plaintiffs suffered serious or severe emotional distress as result [sic] of defendants' Ellerbee, Lutz, and Filson's deliberate indifference to or reckless disregard for Plaintiffs' Fourth and Fourteenth Amendment rights." In their response brief, Plaintiffs appear to latch

onto this interpretation and argue that the Fifth Claim should be construed as a claim for emotional distress damages as the result of Defendants' alleged § 1983 violations, either in addition to or instead of a state law claim for negligent infliction of emotional distress. Plaintiffs attempt to do so is quite ineffective. As a threshold issue, the Court recognizes that "state immunity laws do not shield the State or its officials from liability based on 42 U.S.C. § 1983." *Miller v. City of Red Lodge*, 65 P.3d 562, 566 (Mont. 2003).

Plaintiffs state that, "Emotional distress is a compensable injury under § 1983 claims," (Doc. 67 at 17), citing *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 508-09 (9th Cir. 2000) and *Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 339-42 (1988). However, neither of these cases supports the proposition for which they are cited.

Based on the wording of the Fifth Claim of the Amended Compliant and the information before the Court at this time, it simply cannot determine if or how the Fifth Claim pertains to the wholly separate § 1983 claims. Due to this ambiguity, and the Plaintiffs' failure to sufficiently and clearly assert and support a claim for liability against the Individual Defendants under the Fifth Claim of the Amended Complaint, the Court will order Plaintiffs to show cause why all claims against the Individual Defendants made in the Fifth Claim of the Amended Complaint should

not be dismissed as state law claims for which the Individual Defendants are entitled to statutory immunity.

## 11. Collateral Estoppel

The Court declines to address collateral estoppel at this time in light of its determinations on the subject contained within its order on Plaintiffs' Motion in Limine (Doc. 77). The Court awaits the parties stipulation in the final pretrial order as to those portions of the state court proceedings – as well as the precise issues resolved by District Court Judge Holly Brown – that they wish the Court to take judicial notice of pursuant to Rule of Evidence 201, or to utilize as the basis for a finding of collateral estoppel.

## CONCLUSION

The Court will now return to the six claims in the Amended Complaint, describe what portions of each claim this order will dismiss, and attempt to state what remains of each claim.

## FIRST CLAIM - Negligence

On the bases of quasi-judicial immunity and a break in the chain of causation, the Court will dismiss all portions of this claim with the exception of negligence as to the investigation undertaken by Ellerbee on behalf of the Department prior to placing E.G. in emergency protective custody. Damages for

any successful claim related to negligent investigation will be limited to the period prior to the state district court's June 1, 2005 order.

## SECOND CLAIM - Civil Rights Violation - Fourth Amendment

The Court will dismiss this claim in its entirety because Ellerbee is entitled to qualified immunity.

## THIRD CLAIM - Civil Rights Violation - Fourteenth Amendment

The Court will dismiss all portions of this claim that pertain to Ellerbee. The Court will dismiss any claims against Lutz predicated on any involvement in making the decision to place E.G. in emergency protective custody or the preparation of the affidavit in support of the petition for emergency protective services. The Court will dismiss any liability as to Filson and Lutz predicated on maintaining actual physical custody of E.G under the theory of absolute quasi-judicial immunity. The Court will dismiss any claims as to Lutz and Filson predicated on alleged false testimony on the basis of absolute witness immunity. The Court will dismiss any claims as to Lutz predicated on false or reckless allegations in affidavits or reports on the basis of qualified immunity.

Thus, in the Court's estimation, essentially all that remains of this claim are the various allegations against Lutz and Filson related to their handling of the treatment plans.

**FOURTH CLAIM - Civil Rights Violations - Fourteenth Amendment**

There is considerable overlap between this Claim and Claim Three, and the Court dispenses with these overlapping claims in manner described in its summary of Claim Three. The Plaintiffs still have a live claim for conspiracy relating to the handling of the treatment plans by Lutz and Filson.

**FIFTH CLAIM - Negligent Infliction of Emotional Distress**

The Court will dismiss all portions of this claim that pertain to Ellerbee. On the basis of statutory immunity, the Court will dismiss this claim as to Lutz and Filson insofar as it is a state claim. The Court will order Plaintiff to show cause why this claim should not be dismissed in its entirety.

The Court will dismiss all portions of this claim as to the Department's alleged negligence related to all activities, with the exception of the initial investigation.

**SIXTH CLAIM - Exemplary Damages**

The Court will dismiss all portions of this claim that pertain to Ellerbee. The remainder of the claim survives.

**ORDER**

IT IS ORDERED that

(1) Defendants' motions for summary judgment (Doc. 53; 55) are

GRANTED in part, and DENIED in part, consistent with this opinion.

(2) Defendant Christy Ellerbee is DISMISSED from this matter.

(3) The Plaintiffs shall show cause why the Fifth Claim of the Amended Complaint should not be interpreted as a claim brought under state law, and dismissed as to the Individual Defendants based on statutory immunity. Plaintiffs shall file a brief showing cause and clarifying its position on this matter no later than **Monday, February 3, 2014**. The brief shall consist of no more than 3,000 words.

(4) Counsel for all parties shall participate in a telephonic scheduling conference set for **Tuesday, February 11, 2014 at 1:30 p.m.** for the purpose of rescheduling the final pretrial conference and jury trial in this matter, as well as to establish deadlines for the submission of trial materials to the Court. Counsel will be advised of the conference line number at a later date.

Dated this 21ˢᵗ day of January, 2014.

Dana L. Christensen, Chief Judge
United States District Court